NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0736n.06

Case No. 12-5980

**FILED**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SEP 2 2 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RONNELL JASON LEBERRY, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| JOHN HOWERTON, Warden, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | O P I N I O N |

BEFORE:     COLE, Chief Judge; BOGGS and STRANCH, Circuit Judges.

COLE, Chief Judge.  A Tennessee jury convicted Ronnell Leberry of aggravated assault, extortion, especially aggravated kidnapping, and two counts of facilitation to commit aggravated rape.  After Leberry exhausted his state-court direct and collateral appeals, he filed a habeas corpus petition under 28 U.S.C. § 2254, raising several claims, including that trial counsel was ineffective.  Two distinct issues are before the court.  The first is whether Leberry can show cause and prejudice to excuse the procedural default of certain ineffective-assistance-of-counsel claims.  Under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), Leberry can establish cause, but the district court did not determine if Leberry could demonstrate prejudice to overcome his procedural default.  Therefore, we reverse and remand this issue to the district court to consider whether Leberry can establish prejudice.  The second

matter before the court is whether one particular ineffective-assistance-of-counsel claim—that trial counsel was ineffective for failing to request an accomplice jury instruction—can succeed on the merits. Because the state court's decision on this claim was not contrary to or an unreasonable application of federal law, we affirm the district court's order denying habeas relief on the accomplice jury instruction claim.

## I. BACKGROUND

Demetris Grant and the victim in this case worked together at a computer parts store and often car-pooled to work. One Saturday, the victim was supposed to take Grant to work, but she did not do so. The next day, Grant and her boyfriend, petitioner Ronnell Leberry, confronted the victim at her apartment. Grant warned the victim that she was going to "kick [her] ass" for not taking her to work. Grant made good on this threat by hitting and kicking the victim and terrorizing her with a serrated knife. The situation quickly escalated. Either Grant or Leberry told the victim to undress and lie down on her back, and her attackers took turns heating a fork over the stove and burning the victim's breasts and vagina. Then, either Leberry or Grant inserted a mop handle into the victim's vagina. Grant and Leberry also forced the victim to write a note stating that she owed them two hundred and fifty dollars and that they could take her car as collateral until she repaid them.

Against her will, Leberry then transported the victim to Grant's apartment, announcing upon their arrival that anyone in the neighborhood who wanted oral sex should come there. Once inside, the victim was again forced to undress and have sex with multiple men. She testified that Grant and Leberry made her do "jumping jacks, sit-ups, and stand in the corner with one leg raised, all of which she did because her life was threatened." The episode finally ended when Grant and Leberry gave the victim permission to leave.

- 2 -

Grant and Leberry were indicted on multiple charges, but before trial, Grant agreed to testify against Leberry in exchange for a reduced sentence.

At trial, Grant implicated Leberry in every part of the attack. She testified that it was Leberry who made the victim get undressed; Leberry who burned her breasts and vagina with a hot fork; Leberry who twice inserted the mop into the victim's vagina; and Leberry who drove her to another location to have sex with other men. Grant admitted only to heating the fork the first time but denied burning the victim with it.

Grant was not the only person to incriminate Leberry. One of the victim's neighbors observed the victim and her attackers arguing and heard someone begging and "screaming bloody murder" while inside the apartment. Officers discovered a "knife matching the description provided by [the victim]," a burnt fork outside the victim's apartment, and "pieces of a burnt mop strewed across the kitchen floor." Medical experts explained that the victim sustained "excruciatingly painful" second-degree burns on her labia, bruises on her arms and knees, and burns on her breasts "in the perfect shape of a dinner fork," and that she required multiple corrective surgeries. The victim's roommate indicated that when she returned to the apartment after the incident, it smelled like "something freshly burned."

The victim also testified at trial. Though her memory of the incident was "not very good," she told the jury, in no uncertain terms, that one of her attackers forced a mop in her vagina, that she was burned with a fork on her breasts and vagina, and that the entire experience caused her severe pain.

The jury found Leberry guilty of facilitation of aggravated rape, aggravated assault, extortion, and especially aggravated kidnapping. He was ultimately sentenced to twenty-eight

years of imprisonment. *State v. Leberry*, No. M2003-01228-CCA-R3-CD, 2005 WL 711913, at *1 (Tenn. Crim. App. Mar. 28, 2005).

After Leberry's convictions were affirmed on direct appeal, he sought post-conviction relief in Montgomery County Court. On post-conviction review, he argued that trial counsel was ineffective by failing to request a jury instruction explaining that accomplice testimony must be corroborated. *Leberry v. State*, No. M2007-01813-CCA-R3-PC, 2009 WL 112579, at *4–5 (Tenn. Crim. App. Jan. 14, 2009). The court denied post-conviction relief because Leberry could not show that counsel's failure to ask for this instruction prejudiced him.

In 2010, Leberry timely filed a pro se habeas petition under 28 U.S.C. § 2254, raising two ineffective-assistance-of-counsel claims. He alleged that trial counsel was ineffective in failing to request an accomplice jury instruction and in failing to impeach the victim's testimony. A year later, through counsel, Leberry filed an amended petition, which included additional ineffective-assistance arguments.[1] The district court determined that all but one of the ineffective-assistance claims raised in the pro se petition were barred by procedural default because Leberry could have raised these arguments in state court but failed to do so. Nevertheless, the district court issued a certificate of appealability ("COA") on the issue of whether Leberry could establish cause to excuse his procedural default, citing *Martinez*. This court later expanded the COA to include Leberry's claim on the merits that trial counsel rendered ineffective assistance by failing to request an accomplice jury instruction.

Leberry timely appealed.

---

[1] The new ineffective-assistance claims raised in Leberry's amended petition are barred by the Antiterrorism and Effective Death Penalty Act's (AEDPA) one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1)(A). The district court correctly concluded that the new ineffectiveassistance arguments raised in the amended petition did not relate back to the initial petition and were time-barred. Therefore, it was proper for the court to dismiss the new ineffective-assistance claims in the amended petition as untimely filed.

## II. ANALYSIS

### A. Procedural Default

We review de novo a district court's conclusion that a petitioner's habeas claim is procedurally defaulted. *Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013). Procedural default may occur if a petitioner failed to present the claim to the state court and an "independent and adequate state ground" prevents him from doing so. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). If a state conviction is based on the failure to raise a claim in accordance with state law, a federal court may not entertain a petitioner's constitutional argument. *Trevino v. Thaler*, 133 S. Ct. 1911, 1917 (2013). It is improper for a federal court to "interefere[] with a State's application of its own firmly established, consistently followed, constitutionally proper procedural rules." *Id.* However, a court may excuse the procedural default if a petitioner demonstrates cause and prejudice from a violation of federal law. *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012).

Leberry argues that the Supreme Court's decisions in *Martinez v. Ryan* and *Trevino v. Thaler* provide cause to excuse the procedural default of his ineffective-assistance-of-counsel claims. In *Martinez*, the Court concluded that if a state law *prohibits* defendants from raising ineffective assistance claims on direct appeal, "a procedural default will not bar a federal habeas court from hearing" that claim "if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 1320. In *Trevino*, the Court expanded *Martinez*'s reach by indicating that "cause" to excuse a default may also occur where a state's "procedural framework, by reason of its design and operation, makes it *highly unlikely* in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ." *Trevino*, 133 S. Ct. at 1921 (emphasis added).

Though *Martinez* and *Trevino* discussed Arizona's and Texas's state procedures, these cases apply with equal force to defendants convicted in Tennessee. *See Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014). In this case, the warden conceded at oral argument that *Sutton* resolves the question of whether *Martinez* and *Trevino* apply to Tennessee's procedures; therefore, Leberry has cause to excuse his defaulted ineffectiveness claims. The second part of the procedural default analysis requires the court to determine whether Leberry was prejudiced. Because the district court did not determine whether prejudice exists, we remand this issue for the court to address whether there is "actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750.

**B. Ineffective-Assistance-of-Counsel**

We now turn to the merits of the one substantive claim before our court—whether Leberry's counsel rendered ineffective assistance by failing to request an accomplice jury instruction. Under AEDPA, if a state court has adjudicated a federal constitutional claim on the merits, habeas relief may not be granted unless the state court's decision was "contrary to" or "involved an unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1). State court decisions "must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams v. Taylor*, 529 U.S. 362, 389 (2000). A state court's factual determinations are presumed to be correct, and the petitioner bears the burden of showing, with clear and convincing evidence, that a state court's factual conclusions were unreasonable. 28 U.S.C. § 2254(e)(1).

Leberry was convicted in state court after 1996; therefore, AEDPA's stringent standard of review applies to the federal claims the state court decided on the merits. In post-conviction

proceedings, the state court analyzed Leberry's ineffective-assistance claim on the merits under *Strickland v. Washington*, 466 U.S. 668 (1984).

To establish ineffective assistance of counsel, a petitioner must show that his attorney's performance was deficient and that he was prejudiced as a result. *Strickland*, 466 U.S. at 687. A petitioner is prejudiced if he shows a "substantial," not simply a "conceivable," chance of a different result. *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011). The key inquiry is whether counsel's representation compromised the fairness of the adversarial process. *Strickland*, 466 U.S. at 686.

The post-conviction court recognized that trial counsel performed deficiently by not requesting an accomplice jury instruction. *Leberry*, 2009 WL 112579 at *5. Still, it held that Leberry could not prevail because he could not establish that counsel's error prejudiced him. In Leberry's view, the state court used the wrong standard—a harmless-error analysis—in concluding that he was not prejudiced. We find Leberry's challenge must fail because the state court reasonably applied *Strickland*. *See Burt v. Titlow*, 134 S. Ct. 10, 17 (2013).

On appeal, the warden does not address whether defense counsel's conduct fell below an objective standard of reasonableness. Assuming arguendo that counsel's performance was deficient, Leberry cannot show that he was prejudiced.

As evidence of prejudice, Leberry claims that at least one member of the jury would have found in his favor, on at least one of the counts of conviction, had the jury been instructed that accomplice testimony must be corroborated. The problem with Leberry's argument is that his reading of Tennessee's corroboration rule is too demanding. The rule is satisfied even if the corroborative evidence is "slight," "entirely circumstantial," or insufficient "in and of itself, to support a conviction." *State v. Gaylor*, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992). The

corroboration must "lead[] to the inference" that a crime has occurred and that "the defendant is implicated in it." *Id.* Though each count charged against the defendant must be corroborated, *State v. Pitts*, 1996 WL 529663, at *5 (Tenn. Crim. App. Sept. 19, 1996), complying with this rule is easily accomplished: "[a]n accomplice's testimony is deemed sufficiently corroborated by evidence placing a defendant at the scene of the crime as described by the accomplice." *State v. Barnard*, 899 S.W.2d 617, 626 (Tenn. Crim. App. 1994).

Leberry's convictions rested on more than uncorroborated accomplice testimony. Consider his conviction for facilitation of aggravated rape. Leberry claims that Grant's testimony—that he alone inserted the mop handle into the victim's vagina—was uncorroborated. Yet, the victim explained that either Grant or Leberry wielded the mop. Although the victim could not recall who engaged in that conduct and whether there were two separate penetrations with the mop handle, this does not invalidate the corroborative evidence presented. A gynecology expert testified that the victim's injuries were consistent with "[s]omething hard [entering the vagina] . . . with some force" and that this was inconsistent with normal intercourse. *Leberry*, 2005 WL 711913, at *4. The victim's neighbor observed Leberry enter the victim's apartment and heard someone "screaming bloody murder." *Id.* at *9. At trial, Grant recounted that Leberry inserted the mop handle in the victim twice and that, on the second time, "he shoved it hard and it made her scream." *Id.* at *7.

Without question, the victim, her neighbor, and Grant placed Leberry at the scene of the crime. Given the eyewitness accounts and medical testimony, there is corroborating evidence to support Leberry's convictions of facilitation of aggravated rape. Accordingly, the state court's determination regarding prejudice was not "contrary to" or an "unreasonable application of"

clearly established federal law, as articulated in *Strickland v. Washington. See Burt*, 134 S. Ct. at 15.

As to Leberry's convictions for aggravated assault and aggravated kidnapping, Leberry claims that the corroborative evidence provided by the victim was unreliable and insufficient. By attacking the reliability of the corroboration, Leberry appears to concede that corroboration exists. Admittedly, defense counsel did impeach the victim with a prior statement that Grant alone burned her with the fork, but the victim's testimony satisfies the corroboration rule because her testimony "tends to connect the defendant with the commission of the offense." *Gaylor*, 862 S.W.2d at 552. Despite the impeachment, the victim linked Leberry to the aggravated assault and kidnapping crimes, and it cannot be said that the omitted jury instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Here, the jury was fully equipped to evaluate Grant's testimony because the trial court brought to the jury's attention issues concerning testimony in general:

> You must decide which witnesses you believe and how important you think their testimony is. You do not have to accept or reject everything a witness said. . . . Does the witness have any bias, prejudice, or personal interest in how the case is decided? Have there been any promises, threats, suggestions, or other influences that affected how the witness testified?

The "failure to give a specific accomplice instruction did not violate [Leberry's] constitutional rights" or constitute an unreasonable application of federal law. *Goff v. Bagley*, 601 F.3d 445, 470 (6th Cir. 2010). Because the jury knew that Grant received a reduced sentence for testifying against Leberry, the jury was in the best position to weigh Grant's testimony that Leberry forced the victim to undress, burned her with a fork, and raped her with the end of a mop handle.

In essence, Leberry was not an innocent bystander; ample corroboration supports his convictions. Though counsel performed deficiently by not seeking an accomplice jury instruction, its absence neither "undermine[s] confidence in the outcome" of Leberry's case nor casts doubt on the fairness of his trial. *Strickland*, 466 U.S. at 694. Leberry cannot show a substantial chance that even if the proper instruction had been given, the outcome of the trial would have differed. Accordingly, the state court's decision was not "contrary to" or an "unreasonable application of" clearly established federal law. *See Burt*, 134 S. Ct. at 15.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's order denying habeas relief on the accomplice jury instruction claim. On remand, the district court should consider whether the impeachment claim defaulted by Leberry is sufficiently substantial to overcome the default.