RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0085p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

DAVID E. WADE,

*Petitioner-Appellant,*

*v.*

No. 12-4229

DEBORAH TIMMERMAN-COOPER,

*Respondent-Appellee.*

─────────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:09-cv-00632—Algenon L. Marbley, District Judge.

Argued: October 9, 2014

Decided and Filed: May 8, 2015

Before: BOGGS, SUTTON, and STRANCH, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Eric T. Werlinger, WINSTON & STRAWN LLP, Washington, D.C., for Appellant. William H. Lamb, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Eric T. Werlinger, WINSTON & STRAWN LLP, Washington, D.C., for Appellant. William H. Lamb, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Cincinnati, Ohio, for Appellee.

─────────────────

**OPINION**

─────────────────

BOGGS, Circuit Judge. Petitioner-Appellant David E. Wade, a state prisoner in Ohio, appeals from the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

1

Wade was tried in Ohio state court for several offenses, including rape, kidnapping, aggravated robbery, and certain firearm specifications, stemming from his attack on a woman in her apartment. The jury in Wade's first trial convicted him of, inter alia, rape and kidnapping, which each included "force" as an essential element, but acquitted him of aggravated robbery and all firearm specifications. Wade's convictions were subsequently overturned for reasons not relevant here, and Wade was retried for rape and kidnapping. Over the objections of defense counsel, the State reintroduced testimony suggesting that Wade possessed a firearm during the attack, and the trial court denied Wade's request for a limiting instruction regarding that evidence. Wade was again convicted of the rape and kidnapping offenses.

On direct appeal, Wade raised as error the readmission of the firearm evidence and the trial court's failure to provide a limiting instruction. The Ohio Court of Appeals agreed with Wade that the jury in his first trial determined that he did not possess a firearm.[1] The court also concluded that while the doctrine of collateral estoppel did not bar the readmission of the firearm evidence, the principles underlying that doctrine required a limiting instruction informing the jury that it could not consider that evidence in finding the element of force. After noting a significant danger that the jury in Wade's second trial did in fact consider the firearm evidence in finding force, the Court of Appeals overturned all of Wade's convictions.

The State filed an application for reconsideration, stressing that Wade's trial counsel requested a limiting instruction regarding the firearm evidence only as to the rape count and not as to the kidnapping count, and that the failure to provide the instruction on the rape count did not necessarily implicate Wade's other convictions. Upon reconsideration, the Ohio Court of Appeals held that because Wade only requested a limiting instruction regarding the element of force for rape, Wade forfeited review of the failure to provide such an instruction for kidnapping except for plain error. Under Ohio's plain-error standard, the state court determined that it could not say that the outcome of Wade's kidnapping conviction clearly would have been different had there been a limiting instruction, and therefore reinstated Wade's conviction on that count.

---

[1]In all relevant proceedings on appeal, the Ohio courts assumed that the jury in Wade's first trial conclusively determined that Wade did not possess a gun.

In this federal habeas proceeding, Wade makes two central contentions. First, Wade argues that principles of collateral estoppel embodied in the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution barred state prosecutors in the second trial from reintroducing the firearm evidence that did not convince the jury in Wade's first trial. Second, Wade argues that even if the firearm evidence were otherwise admissible, the absence of a limiting instruction on the kidnapping count resulted in a fundamentally unfair trial in violation of due process. Wade admits that this due-process claim was not raised before the Ohio courts, but contends that this procedural default is excused by ineffective assistance of trial and appellate counsel. The district court denied Wade's petition after determining that evidence regarding Wade's use of a firearm was constitutionally admissible in the second trial and that Wade failed to demonstrate ineffective assistance of counsel to excuse the procedural default of his due-process claim.

Under the framework established by the Supreme Court in *Ashe v. Swenson*, 397 U.S. 436 (1970), and *Dowling v. United States*, 493 U.S. 342 (1990), we hold that the firearm evidence was not an issue of ultimate fact in Wade's second trial such that principles of collateral estoppel required its exclusion. In addition, we hold that the lack of a limiting instruction regarding that evidence did not "so infec[t] the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). We therefore affirm the district court's denial of Wade's petition.

I

A. Wade's Criminal Conduct and Indictment

On August 20, 2002, Wade knocked on the door of the apartment belonging to "C.B." and asked to borrow her phone. After C.B. lent Wade the phone and he finished using it, C.B. opened the door slightly to get the phone back. Wade, who was much taller and heavier than C.B., then pushed his way into the apartment, allegedly pulled a gun, told C.B. to take off her clothes and lie on the living room floor, lay on top of her, and raped her. Following the attack, Wade stole C.B.'s purse, laptop, phone, and car keys, and drove away in C.B.'s car. The entire incident lasted between 20 and 30 minutes.

Soon after, C.B. went to a hospital where a physical examination corroborated that she was assaulted. She also later identified Wade as the man who attacked her. Two weeks later, Wade was arrested after fleeing from the police in C.B.'s car. He was in possession of a bag of cocaine at the time of arrest, but no gun was found.

A Franklin County Grand Jury indicted Wade on one count each of rape, aggravated burglary, kidnapping, and aggravated robbery, and two counts of theft. Each of these counts also included a firearm specification. Wade was also charged with one count of receiving stolen property, failure to comply with a police officer, and possession of cocaine. The rape and kidnapping charges are most relevant for purposes of this appeal.

An individual is guilty of rape under Ohio law if he "engage[s] in sexual conduct with another when [he] purposely compels the other person to submit by force or threat of force." Ohio Rev. Code § 2907.02(A)(2). Additionally, an individual is guilty of kidnapping if he "restrain[s] the liberty of" another person "by force, threat, or deception" to, inter alia, "facilitate the commission of any felony" or "engage in sexual activity." *Id.* § 2905.01(A). "Force," which is an element of both rape and kidnapping as charged in this case, is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." *Id.* § 2901.01(A)(1). Moreover, under Ohio's firearm-specification statute, an individual charged with an offense is subject to an additional, mandatory prison term if he "had a firearm on or about [his] person or under [his] control while committing the offense and displayed the firearm, brandished the firearm, indicated that [he] possessed the firearm, or used it to facilitate the offense." *Id.* § 2941.145(A).

## B. Wade's First Trial and Appeal

In his initial trial, Wade admitted that he stole items from C.B.'s apartment and fled from police in her car, but denied both that he had a gun and that he raped C.B. Instead, he asserted that they had consensual sex. The prosecution introduced evidence that Wade possessed a gun during the attack, including C.B.'s testimony that Wade "pulled a silver gun out" and held it in his hand while he forced her to remove her clothes and raped her, and that C.B. "didn't want to be killed" and would not have complied with Wade's demands if he did not have the gun. The jury convicted Wade of rape and kidnapping, which, as the offenses were charged, each included

"force" as an essential element, but acquitted him of all firearm specifications. Wade was also acquitted of aggravated robbery, which is defined as "[having] a deadly weapon on or about the offender's person or under the offender's control and either display[ing] the weapon, brandish[ing] it, indicat[ing] that the offender possesses it, or us[ing] it," or "[inflicting], or attempt[ing] to inflict, serious physical harm on another," while "attempting or committing a theft offense." Ohio Rev. Code § 2911.01.

Wade appealed his convictions to the Ohio Court of Appeals, arguing, among other things, that there was insufficient evidence to support his convictions and that he was deprived of his right to counsel due to his lawyer's absence during the preparation and submission of responses to jury questions during deliberations. *See State v. Wade* [*Wade I*], No. 03AP-774, 2004 WL 1688434 (Ohio Ct. App. July 29, 2004). The Court of Appeals rejected Wade's claim of insufficient evidence, but found that the procedure for responding to the jury's questions was "deficient." *Id.* at *7–8. Wade's convictions were vacated and the case was remanded for a new trial.

C. Wade's Second Trial and Appeal, and the State's Application to Reconsider

The State retried Wade for rape and kidnapping (as well as other charges not including aggravated robbery or the firearm specifications), again offering C.B.'s testimony that Wade pushed his way into her apartment, pulled out a gun, made her remove her clothes, and raped her. Wade's new counsel filed a motion in limine with the trial court seeking to exclude testimony regarding the firearm, arguing that introducing such evidence would be contrary to the jury verdict in Wade's first trial. Specifically, Wade's counsel argued that because Wade was acquitted of aggravated robbery and all firearm specifications, the jury in his first trial concluded that he did not have a gun. Thus, counsel argued, collateral estoppel prevented the State from introducing testimony suggesting that Wade "did posses[s] a firearm when it has been determined by a jury that he did not." The trial judge agreed that the first jury found that the prosecution did not prove that Wade had a firearm; however, because use or possession of a firearm was "not an element of rape [or] kidnapping," he ruled that the State was not barred from introducing testimony regarding the presence of a firearm on those counts. The judge later denied a motion for reconsideration and a motion for acquittal that raised the same issue.

At the close of the prosecution's case, Wade's counsel requested a limiting instruction stating that the jury "can't find [Wade] guilty of possessing a deadly weapon for the force that's used in the rape." In making his request, Wade's counsel cited C.B.'s testimony about how Wade used a gun to make her comply. Counsel did not, however, request a limiting instruction for the kidnapping charge, nor did he specifically raise a due-process challenge regarding the limiting instruction. The judge denied the request based on his prior rulings, and the jury later convicted Wade of all counts.

With the assistance of new counsel in his second appeal, Wade raised eight points of error, including claims regarding the admission of the firearm evidence and the failure to provide a limiting instruction. However, Wade's appellate counsel did not raise "trial counsel's failure to preserve [a] due-process claim on the kidnapping jury instruction. Nor did he raise a claim of ineffective assistance predicated on trial counsel's failure to preserve the error." Appellant Br. 11. The Ohio Court of Appeals recognized that the doctrine of collateral estoppel, which is incorporated into the Double Jeopardy Clause, "prohibits the government from relitigating an issue of ultimate fact that was determined by a valid and final judgment." *State v. Wade* [*Wade II*], No. 06AP-644, 2008 WL 366143, at *4 (Ohio Ct. App. Feb. 12, 2008). And it agreed with Wade that "the first jury actually decided that [he] did not possess a gun during the offenses and it is not conceivable that a rational jury could have grounded its verdict on any other issue." *Id.* at *5. However, because the State did not need to prove that Wade had a gun in order to convict on the rape and kidnapping charges, the first jury's conclusion that Wade did not possess a firearm was not an issue of ultimate fact in the second trial. *Id.* at *5–6. In its ruling, the Court of Appeals noted that the firearm testimony "could be used to prove the force element of both rape and kidnapping," but recognized that "[t]here are other ways to establish the element of force for these offenses," including the size disparity between Wade and his victim and Wade's use of force in entering the apartment. *Id.* at *6. Indeed, the court recognized that "although the first jury determined that appellant did not have a gun, it nevertheless found appellant guilty of rape and kidnapping, thereby finding the element of force beyond a reasonable doubt even without a gun." *Ibid.*

Although it rejected Wade's argument that collateral estoppel barred admission of the firearm evidence, the Ohio Court of Appeals did initially conclude that "the principle underlying that doctrine requires a limiting instruction such as the one [Wade] requested"—i.e., that the jury not consider the firearm testimony in determining whether he used force in committing rape. *Id.* at *6–7. "Absent a limiting instruction," the court reasoned, "there was a significant danger that the jury in the second trial would find the element of force for rape based upon evidence that the appellant had a gun, even though the jury in the first trial necessarily found that appellant did not possess a gun during the offenses." *Id.* at *7. The Court of Appeals held that the trial court's abuse of discretion in refusing the instruction was not harmless because although the court "previously referred to evidence other than the gun testimony that could support a finding of force in this case, that evidence was minimal," *id.* at *7 n.7, and the trial court's error created a "substantial likelihood that the jury considered [the firearm testimony] in finding the element of force." *Id.* at *7. The court therefore overturned Wade's convictions and awarded a new trial on all counts.

The State filed an application to reconsider, arguing that the reversal of Wade's convictions on all counts went "beyond what the claimed error regarding [the limiting instruction on] the rape count can justify." The State stressed that Wade's trial counsel requested a limiting instruction only on the rape count, and not on the kidnapping count. Thus, because Wade's counsel "never raised below the issue of whether the jury should be instructed to omit the gun in its analysis of the kidnapping charge . . . , the jury instruction issue [should] be addressed under a plain-error standard of review" for that count. Wade's appellate counsel responded that the State made no attempt at trial to "limit consideration" of the firearm evidence to only the rape count; thus, that evidence affected the jury's consideration of all of the counts.

Upon reconsideration, the Ohio Court of Appeals reinstated Wade's kidnapping conviction, along with his other non-rape and non-aggravated-burglary convictions. *State v. Wade* [*Wade III*], No. 06AP-644, 2008 WL 1723671 (Ohio Ct. App. Apr. 15, 2008). The court agreed with the State that Wade's counsel did not request a limiting instruction for any count other than rape, thus resulting in plain-error review of that issue as to the kidnapping count, and determined that the trial court's error in not providing an instruction on the rape count "did not

necessarily implicate [Wade's] other convictions." *Id.* at *1. Regarding the kidnapping count, the Court of Appeals determined that "a reasonable jury could have concluded that even without the evidence of the gun, [Wade], by force or threat, restrained the victim's liberty in order to facilitate the commission of a felony or to engage in sexual activity with the victim." *Id.* at *2. In making this determination, the court again stressed that Wade forcibly pushed his way into C.B.'s apartment and was much larger than his victim. *Ibid.* As a result, under a plain-error standard, the court could not "say that the outcome of [Wade's] kidnapping conviction clearly would have been different but for a limiting instruction as to the gun testimony." *Ibid.*[2] Wade's conviction and sentence for kidnapping were therefore reinstated.

## D. Subsequent State Proceedings

After his kidnapping conviction was reinstated, Wade moved to reopen his appeal in the Ohio courts under Ohio Rule of Appellate Procedure 26(B),[3] arguing that his appellate counsel was ineffective in not raising an ineffective-assistance-of-trial-counsel claim regarding the failure to request a limiting instruction on the kidnapping count. The Court of Appeals rejected this argument, concluding based on the same evidence of force considered in the earlier appeal—i.e., that Wade "forcibly pushed his way through the door and blocked the victim's exit" and was superior in height and weight—that "there is not a reasonable probability that [Wade's] kidnapping conviction would have been reversed had appellate counsel raised trial counsel's failure to request a limiting instruction regarding the gun testimony." *State v. Wade* [*Wade IV*], No. 06AP-644, slip op. at 5 (Ohio Ct. App. Sept. 25, 2008). Thus, Wade was unable to demonstrate prejudice and could not establish a colorable claim of ineffective assistance of

---

[2]The Ohio Court of Appeals also determined that the trial court did not commit plain error by failing to provide a limiting instruction with respect to Wade's "convictions for robbery, theft, receiving stolen property, failure to comply with an order of a police officer, and possession of cocaine" because the firearm evidence did not have an impact on those counts. *State v. Wade* [*Wade III*], No. 06AP-644, 2008 WL 1723671, at *3 (Ohio Ct. App. Apr. 15, 2008). In contrast, the court affirmed the reversal of Wade's aggravated-burglary conviction because there was no evidence other than the firearm (and Wade's overturned rape conviction) to establish the threat-of-physical-harm element of aggravated burglary. *Id.* at *2.

[3]Ohio Rule of Appellate Procedure 26(B)(1) provides that: "A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."

appellate counsel. Thereafter, the Supreme Court of Ohio denied Wade's motion for leave to appeal.

On remand, Wade pleaded guilty to the rape charge, and the trial court sentenced him to three years of imprisonment to be served concurrently to the fifteen-year term that he was serving with respect to his remaining convictions. Wade again appealed to the Ohio Court of Appeals, which rejected Wade's claims of sentencing error and affirmed the trial court's judgment. *See State v. Wade*, No. 10AP-159, 2010 WL 5543880, at *1, 14 (Ohio Ct. App. Dec. 28, 2010), *rev'd*, *In re Cases Held for Decision in State v. Williams*, 957 N.E.2d 289 (Ohio 2011). The Ohio Supreme Court reversed on grounds not relevant here, and remanded with instructions to apply recent state-court precedent regarding the classification and registration of sex offenders. *In re Cases Held for Decision*, 957 N.E.2d at 289–90.

E. Federal Habeas Proceedings

Wade filed a federal habeas petition raising several claims, three of which are relevant to this appeal: (1) collateral estoppel barred the admission of the firearm evidence in the second trial (Claim One); (2) the trial court committed error by failing to give a limiting instruction on the firearm evidence (Claim Two); and (3) appellate counsel was ineffective for not raising an ineffective-assistance-of-trial-counsel claim regarding the failure to request a limiting instruction for the kidnapping count.

The magistrate judge recommended that Wade's petition be denied in whole. *Wade v. Sheets* [*Sheets I*], 2:09-CV-632, 2012 WL 870221 (S.D. Ohio Mar. 14, 2012). The magistrate judge (incorrectly) determined that Wade procedurally defaulted both Claims One and Two because he failed to object at trial regarding the kidnapping and other non-rape counts, and that the Ohio court's review of these claims for plain error "d[id] not constitute a waiver of the state's procedural default rules." *Id.* at *15 (citing *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)). Furthermore, the magistrate judge found that Wade could not establish cause for, or prejudice from, his procedural default through a claim of ineffective assistance of trial counsel regarding the failure to request a limiting instruction, "since ample evidence aside from [Wade's] alleged use of a firearm established the use of force" for the kidnapping offense. *Id.* at *28.

The district court adopted the magistrate judge's recommendation and denied Wade's petition. *Wade v. Sheets* [*Sheets II*], 2:09-CV-632, 2012 WL 4087238 (S.D. Ohio Sept. 17, 2012). The district court assumed that Wade preserved Claim One, but applied the reasoning of the Ohio Court of Appeals in *Wade II* in holding that the claim lacked merit. *Id.* at *5 (quoting *Wade II*, 2008 WL 366143, at *3–6, and *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). Even after assuming that the jury in Wade's first trial decided that he did not possess a firearm, the district court agreed with the Ohio Court of Appeals that "evidence regarding [Wade's] use of a firearm nonetheless was constitutionally admissible." *Id.* at *7. The district court also determined that Wade could not demonstrate ineffective assistance of counsel based on his trial attorney's failure to object to the firearm evidence on the kidnapping charge, in view of the other evidence of force. *Ibid.* Thus, according to the district court, there was no cause for Wade's procedural default of Claim Two.

Following the denial of Wade's petition, the district court granted in part Wade's request for a certificate of appealability. On October 17, 2013, this court granted Wade's motion for the appointment of counsel and granted in part Wade's application to expand the certificate of appealability. The issues presented in the expanded certificate are: "(1) Did the district court properly dismiss habeas corpus claims one and two as procedurally defaulted or without merit?; and (2) Did appellate counsel perform ineffectively by failing to argue on appeal that trial counsel was ineffective for not requesting a limiting instruction with respect to the firearm evidence as it pertained to the kidnaping charge?" *Wade v. Timmerman–Cooper*, No. 12-4229, at 5 (Oct. 17, 2013). This court denied Wade's request to bring a freestanding claim of ineffective assistance of appellate counsel, but permitted Wade to raise the issue as cause to excuse any procedural default of his claim regarding the lack of a limiting instruction on the kidnapping charge (i.e., Claim Two). *Id.* at 4.

The district court had jurisdiction over Wade's habeas petition under 28 U.S.C. §§ 1331 and 2254. This court has jurisdiction on appeal under 28 U.S.C. §§ 1291 and 2253.

II

We review a district court's decision to grant or deny a petition for a writ of habeas corpus de novo. *Ballinger v. Prelesnik*, 709 F.3d 558, 560 (6th Cir. 2013). Because Wade filed

his habeas petition subsequent to the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) in 1996, the provisions of that statute apply to his case. Under AEDPA, a federal court may grant habeas with respect to a "claim that was adjudicated on the merits in State court proceedings" only if the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The AEDPA standard of review applies only to claims that were adjudicated on the merits in state court. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Moreover, if a claim was not presented in state-court proceedings because of a petitioner's failure to raise the issue in violation of a state procedural rule, that claim is subject to procedural default and will only be reviewed upon a showing of cause and prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 729, 750 (1991).

III

A. Claim One – Collateral Estoppel

Wade argues in his first claim for relief that principles of collateral estoppel barred the admission in his second trial of evidence suggesting that he possessed a firearm.

1

First, a few words on procedural default. Wade objected at trial to the admission of the firearm evidence under principles of collateral estoppel and double jeopardy, and both the trial court and the Ohio Court of Appeals considered this claim on the merits. *See Wade II*, 2008 WL

366143, at \*2–\*5. Thus, Wade has not procedurally defaulted this claim and we will proceed to the merits.**4**

2

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Constitution's protection against double jeopardy "embodie[s]" the "extremely important principle" of collateral estoppel, which provides "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties." *Ashe v. Swenson*, 397 U.S. 436, 443, 445 (1970).

In *Ashe v. Swenson*, a group of masked men armed with guns robbed six men who were playing poker. *Id.* at 437. State prosecutors unsuccessfully tried Ashe for robbing one of the men at the poker game but, in a second trial held six weeks later, Ashe was convicted of robbing another one of the players. *Id.* at 438–40. The Supreme Court determined that Ashe's acquittal in the first trial barred the prosecution from trying him again for the robbery "because, in the circumstances of that case, the acquittal verdict could only have meant that the jury was unable to conclude beyond a reasonable doubt that the defendant was one of the bandits." *Dowling v. United States*, 493 U.S. 342, 348 (1990). Thus, the "second prosecution was impermissible because, to have convicted the defendant in the second trial, the second jury had to have reached a directly contrary conclusion." *Ibid.*

The Supreme Court in *Ashe* set out an approach for applying collateral estoppel in criminal cases that "requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." 397 U.S. at 444 (internal quotation marks omitted). As recognized by the Ohio Court of Appeals, collateral estoppel serves as a complete bar against a subsequent prosecution where a fact necessarily determined in the first trial "is an essential

---

**4**Appellee agrees that "Claim [O]ne is not procedurally defaulted." Appellee Br. 30.

element of the subsequent prosecution." *Wade II*, 2008 WL 366143, at *3 (citing *Ashe*, 397 U.S. at 446). As is relevant here, "collateral estoppel can also bar certain evidence in a subsequent trial" where such evidence involves "an issue of ultimate fact that was determined by a valid and final judgment." *Id.* at *4 (citing *Dowling*, 493 U.S. at 347).

a

In its collateral-estoppel analysis, the Ohio Court of Appeals first considered Wade's contention that the jury in his first trial necessarily determined that he did not possess a gun during the relevant course of events. *Id.* at *5. The court explained that Wade admitted to stealing C.B.'s property, but was still acquitted by the first jury of aggravated robbery (defined as "attempt[ing] or commit[ting] a theft offense while possessing a deadly weapon") and all firearm specifications. *Ibid.* Moreover, "the jury asked during its deliberations whether [Wade] must have had a deadly weapon to find him guilty of aggravated robbery . . . [and t]he trial court replied in the affirmative." *Ibid.* Therefore, according to the Ohio Court of Appeals, "the first jury actually decided that appellant did not possess a gun during the offenses and it is not conceivable that a rational jury could have grounded its verdict on any other issue." *Ibid.*[5]

The Ohio Court of Appeals then analyzed whether this issue addressed in the first trial was an issue of ultimate fact in Wade's subsequent prosecution for kidnapping. As the court correctly recognized, to find Wade guilty of kidnapping in this case, the State had to prove that he "restrained [C.B.'s] liberty using force," *ibid.* (citing Ohio Rev. Code § 2905.01); however, the statutory definition of "force" did not require the State to prove that Wade used a firearm. *Ibid.*; *see* Ohio Rev. Code § 2901.01(A)(1) ("'Force' means any violence, compulsion, or

---

[5]We do not necessarily agree that this is the case. In a brief filed before the Supreme Court of Ohio in the instant case, the State argued that the first jury did not necessarily find that Wade did not possess a gun, but instead could simply have believed that Wade's gun was inoperable or fake because there was no evidence presented at trial about operability. Thus, the first jury could have declined to convict on the firearm specifications and aggravated-robbery count because it did not believe beyond a reasonable doubt that the gun was a *deadly* weapon. This would not be relevant to the rape, the State argued, because the gun would not have to be operable to convict on that count: To establish the compulsion by force necessary for rape, it would be enough for Wade to have compelled C.B. to submit by causing her to *perceive* a danger.

The Supreme Court of Ohio did not reach the issue, and the Ohio Court of Appeals maintained at all stages that the first jury concluded that Wade did not possess a firearm. As a result, we will assume Wade's characterization of the first jury's verdict to be true for the purposes of this appeal. *Cf. Hardy v. Beightler*, 538 F. App'x 624, 631 (6th Cir. 2013) (Ordinarily, "the burden is on the defendant 'to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding.'") (quoting *Dowling*, 493 U.S. at 350).

constraint physically exerted by any means upon or against a person or thing.").  In fact, Wade could have been convicted of kidnapping without the State ever proving that he had a gun.  *Wade II*, 2008 WL 366143, at \*5–6.  Therefore, according to the Ohio Court of Appeals, the State was not barred under collateral-estoppel principles from admitting evidence that Wade possessed a gun during his attack of C.B.  After resolving the collateral-estoppel issue, the Ohio Court of Appeals went on to determine that the firearm testimony was "otherwise admissible" under Ohio rules of evidence because it was "inextricably related to the charges and provides a complete picture of the sequence of events."  *Id.* at \*6.

As the parties recognize, these determinations by the Ohio Court of Appeals are subject to deference under AEDPA because they resulted from "adjudicat[ion] on the merits in State court," 28 U.S.C. § 2254(d).  Thus, this court must deny habeas relief on Wade's collateral-estoppel claim unless the Ohio courts' adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts.  *Ibid.*

b

Wade contends that the Ohio Court of Appeals unreasonably applied the ultimate-fact inquiry of *Ashe v. Swenson* to the issue of "force" in the kidnapping charge by failing to conduct its analysis in a "practical" manner.  Appellant Br. 22.  According to Wade, the Ohio court failed in this regard when it stressed that there were "other ways to establish the element of force for" kidnapping besides Wade's use of a firearm, *Wade II*, 2008 WL 366143, at \*6, while ignoring that the State "did not [actually] rely upon any alternative theory of force."  Appellant Br. 23.  Wade maintains that "the State *could* have argued that [he] committed kidnapping without the gun testimony.  That theoretical case, however, is irrelevant.  What matters for the purposes of collateral estoppel is what the State *did* argue."  *Id.* at 24.  Furthermore, Wade contends that the Ohio Court of Appeals reached a legal conclusion—i.e., that Wade's firearm possession was not an issue of ultimate fact in the second trial—incompatible with its recognition that "'[t]here is a substantial likelihood that the [second] jury considered [Wade's] alleged use of a gun in finding the element of force.'"  *Id.* at 27 (quoting *Wade II*, 2008 WL 366143, at \*7 n.7).  Thus, according to Wade, "the State necessarily asked the second jury to reach 'a directly contrary conclusion' to

that of the first jury on the question of whether Wade possessed a gun." *Ibid.* (quoting *Dowling*, 493 U.S. at 348).

It is true that collateral estoppel should not be applied in a "hypertechnical" manner, "but with realism and rationality." *Ashe*, 397 U.S. at 444. The Supreme Court has stressed that the collateral-estoppel "inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.'" *Ibid.* (quoting *Sealfon v. United States*, 332 U.S. 575, 579 (1948)). After engaging in this "practical" analysis, we conclude that the determination by the Ohio Court of Appeals that the State was not barred from admitting evidence that Wade possessed a firearm did not involve an unreasonable application of Supreme Court doctrine or an unreasonable determination of the facts.

i

The Supreme Court has described "ultimate facts" in the estoppel context as being those that are "necessary to the judgment" at issue. *Bobby v. Bies*, 556 U.S. 825, 835 (2009). Under this approach, a "determination ranks as necessary or essential only when the final outcome hinges on it." *Ibid.*; *see also* Black's Law Dictionary 629 (8th ed. 2004) (An "ultimate fact" is simply "[a] fact essential to the claim or the defense."). Here, it is undisputed that possession of a firearm is not an essential element of kidnapping under Ohio law. Rather, for the charge of kidnapping in this case, the State was required to prove "force" beyond a reasonable doubt, and such proof may or may not involve the use of a gun. Thus, we must examine whether, in this particular case, the State's theory of force made it necessary to prove that Wade possessed a firearm to establish that essential element beyond a reasonable doubt. *Cf. United States v. Wells*, 347 F.3d 280, 285 (8th Cir. 2003) ("A fact previously determined in a criminal case is not an 'ultimate fact' unless it was necessarily determined by the jury against the government and, in the second prosecution, that same fact is required to be proved beyond a reasonable doubt in order to convict.").

While it is true that the central focus of the State's theory of force at both trials was Wade's possession of a firearm, the Ohio Court of Appeals determined that other evidence could reasonably have supported a jury's conclusion that Wade committed the force necessary for kidnapping without having a gun. Specifically, testimony that Wade, who was taller and heavier

than C.B., forcibly pushed his way into C.B.'s apartment and blocked her exit could reasonably have convinced a jury that Wade restrained his victim's liberty by force. *See Wade II*, 2008 WL 366143, at *6; *Wade III*, 2008 WL 1723671, at *2. The State clearly introduced direct and pervasive testimony that Wade possessed a gun throughout his attack and used that weapon to compel C.B.'s compliance; however, the State elicited other important testimony regarding C.B.'s compliance as well. On redirect examination, C.B. testified that even if Wade did not have a gun, "[f]or the most part [she] would have put up a fight, but if [she] felt like [her] life was in danger, [she] would have complied," and she called attention to her "comparison [in] size" to Wade. Thereafter, she confirmed as "correct" that she might still have feared for her safety with Wade in her apartment even if he were not armed. On recross-examination, C.B. disputed defense counsel's characterization that "if [Wade] didn't have the gun [she] wouldn't have complied," stressing that "being [her] size . . . [and] depending on the situation, [she] could have possibly complied . . . without the gun." When asked again whether she would not have complied but for the gun, C.B. said that she "wouldn't have complied as much, but if [she] felt that [her] life was in danger or if [Wade] was going to do something to [her, she] would have [complied], depending on the situation." Based on such evidence, we cannot say that the Ohio court's determination was unreasonable.

Wade makes much of the statement by the Ohio Court of Appeals that the "evidence other than the gun testimony that could support a finding of force in this case . . . was minimal." *Wade II*, 2008 WL 366143, at *7 n.7. Appellee correctly points out that this statement technically was made in reference to the rape offense, and not the kidnapping, *see* Appellee Br. 26; *see also Sheets I*, 2012 WL 870221, at *28 ("This statement . . . relates to [Wade's] rape conviction, not to evidence of force involved in the kidnapping charge.")—though, as Wade suggests, there was considerable overlap between the State's narrative of force for the kidnapping and rape offenses. In any event, the question is not whether the non-firearm evidence was *minimal* in relation to the firearm-related evidence of force, but rather whether it was *independently sufficient* to support a jury's conclusion that the State proved force beyond a reasonable doubt. In other words, could a reasonable jury have heard all the evidence presented at trial and concluded *both* that Wade did not possess a gun *and* that Wade committed the force required for a kidnapping conviction? The Ohio Court of Appeals answered this question in the

affirmative, *see Wade II*, 2008 WL 366143, at *6; *Wade III*, 2008 WL 1723671, at *2, and the reasonableness of this conclusion is difficult to question because that is what the Ohio courts and the parties here contend the jury did in Wade's first trial. *See Wade II*, 2008 WL 366143, at *6 ("[A]lthough the first jury determined that appellant did not have a gun, it nevertheless found appellant guilty of rape and kidnapping, thereby finding the element of force beyond a reasonable doubt even without a gun.").[6]  As a result, Wade's argument that "the State *necessarily* asked the second jury to reach 'a directly contrary conclusion' to that of the first jury on the question of whether Wade possessed a gun," Appellant Br. 27 (emphasis added), is, under Wade's own theory, mistaken:  The second jury could have concluded that Wade forcibly restrained C.B.'s liberty while believing that Wade did not have a gun, just as the first jury is presumed to have done.[7]

ii

A brief survey of decisions by other circuits supports the conclusion that Wade's possession of a firearm is not an issue of ultimate fact in this case.  Under closely analogous circumstances, the habeas petitioner in *Clarke v. Spencer* argued that the prosecution in a subsequent trial for rape and kidnaping was barred from presenting evidence that he had a gun during the offenses because a previous jury had acquitted him of "assault and battery with a

---

[6]*See also* Appellant Br. 16, 7 ("[T]he first jury exonerated Wade of possessing a gun," but "found Wade guilty of rape and kidnapping.").  Our approach does not involve giving improper "deference to the first jury's kidnapping conviction."  Appellant Reply Br. 11 n.1.  Rather, the first jury's verdict simply lends empirical support to the Ohio court's determination that the non-firearm evidence could support a determination of the force element beyond a reasonable doubt.  Moreover, it demonstrates that Wade's assertion that "it was not possible to convict *this defendant* without proving beyond a reasonable doubt that he possessed a gun," Appellant Br. 30, is tenuous.

[7]It is true that the Ohio Court of Appeals stated that "[t]here is a substantial likelihood that the [second] jury considered [Wade's] alleged use of a gun in finding the element of force," *Wade II*, 2008 WL 366143, at *7 n.7—though, as discussed above, this statement refers to the rape count, and not the kidnapping. *See supra* p. 16. Thus, "[t]here is at least a theoretical possibility that in the second trial" each juror convicted Wade of kidnapping "based on individual determinations that the State proved beyond a reasonable doubt that he used the [gun], resulting in a verdict contrary to that rendered by the first jury." *Santamaria v. Horsley*, 133 F.3d 1242, 1247 (9th Cir. 1998) (en banc).  However, as explained by the Ninth Circuit in a similar case, "even if we should rest our decision upon such a theoretical possibility, such a verdict would be directly contrary to that of the first jury only if no juror would also find [the defendant] guilty under . . . the other . . . theories" of the crime, *id.* at 1248—here, that Wade restrained C.B.'s liberty by forcibly entering her apartment and blocking her exit. As determined by the Ohio Court of Appeals, a reasonable juror could have concluded exactly that based on the other evidence of force presented.  Even if a juror believed beyond a reasonable doubt that Wade used a gun, that is not mutually exclusive with the belief that Wade also committed other acts of force in restraining C.B.'s liberty that did not involve the gun.

dangerous weapon, rape by penetration with a gun, and aggravated rape, which may be proven by the use of a gun during the rape." 582 F.3d 135, 145 (1st Cir. 2009). The First Circuit rejected the collateral-estoppel claim, stressing that neither the rape nor the kidnapping counts required the prosecution to prove that the petitioner had or used a gun. *Id.* at 146. Therefore, there was "no double jeopardy problem, even assuming the [previous] jury . . . determined that [the petitioner] did not use a gun during these crimes." *Ibid.*

Similar to Wade, the defendant in *Santamaria v. Horsley* was acquitted of a sentence-enhancement charge for "us[ing] a deadly weapon (a knife) in the commission of a felony," but convicted of the underlying felonies of murder and robbery. 133 F.3d 1242, 1244 (9th Cir. 1998) (en banc). After the murder conviction was overturned because of an error in jury deliberations, the prosecution retried the defendant and again introduced evidence that he used the knife to commit the murder. *Ibid.* On habeas review, the Ninth Circuit stressed that under the applicable state law, the prosecution need not prove beyond a reasonable doubt that the defendant used a knife to convict for murder. "Therefore, the use of a knife [was] not an ultimate fact for the retrial, and the State cannot be precluded from presenting evidence that [the defendant] stabbed the victim." *Id.* at 1247.

In *United States v. Gil*, the Eleventh Circuit rejected a collateral-estoppel claim raised by a defendant who argued that his acquittal on a charge of possession of cocaine meant that the government was foreclosed from introducing evidence suggesting that he came into contact with cocaine during retrial for conspiracy. 142 F.3d 1398, 1401 (11th Cir. 1998). The court stressed that touching cocaine was not an element of conspiracy to possess cocaine. *Ibid.* "Thus, even if the jury found that [the defendant] did not touch the cocaine, it did not determine an ultimate issue with regard to the conspiracy count . . . ." *Id.* at 1401–02; *see also id.* at 1402 ("[R]egardless of whether the jury found reasonable doubt as to whether [the defendant] touched the cocaine, the government may introduce the . . . evidence because 'touching' is not an essential element of the conspiracy charge.").

Similarly, in *United States v. Brackett*, the Fifth Circuit held that collateral estoppel did not bar the government from reintroducing evidence in a drug-conspiracy prosecution where the defendant was previously acquitted of knowingly possessing drugs. 113 F.3d 1396, 1401 (5th

Cir. 1997). While evidence that the defendant knowingly possessed drugs was "*relevant* to establish [his] voluntary participation in the conspiracy," it was "not *required* to prove the essential elements of the offense." *Ibid.*

Like the Ohio Court of Appeals in the instant case, each of the circuit courts in the cases discussed above relied on the Supreme Court's decision in *Dowling v. United States*, 493 U.S. 342 (1990). *See Clarke*, 582 F.3d at 147 (citing *Dowling*); *Santamaria*, 133 F.3d at 1247 (same); *Gil*, 142 F.3d at 1402 (same); *Brackett*, 113 F.3d at 1400–01 (same). In *Dowling*, the Supreme Court held that the prosecution was not barred from introducing evidence of a prior robbery of which the defendant was acquitted as evidence of other crimes or bad acts under Federal Rule of Evidence 404(b). *Id.* at 349–50. Crucially, the *Dowling* Court "decline[d] to extend *Ashe v. Swenson* and the collateral-estoppel component of the Double Jeopardy Clause to exclude in all circumstances . . . relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted." *Id.* at 348. This decision was "consistent" with the principle that a prior acquittal "does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." *Id.* at 349.

In this case, the Ohio Court of Appeals determined that the testimony asserting that Wade possessed a gun was "otherwise admissible" because it was "inextricably related" to Wade's crimes and provided the jury with "a complete picture" of the relevant events. *Wade II*, 2008 WL 366143, at \*6. Even if we view the outcome of Wade's first trial in the manner that Wade and the Ohio courts suggest, "all that can be determined from the . . . verdict is that the jury found the government had failed to prove the existence of a gun '*beyond a reasonable doubt*.'" *Clarke*, 582 F.3d at 146 (emphasis added). However, the standard for admitting relevant evidence is lower: relevant evidence is admissible if it is probative, "mak[ing] the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Ohio R. Evid. 401; *see also Clarke*, 582 F.3d at 146. Thus, the Supreme Court's holding in *Dowling* supports the conclusion that the "relevant and probative" firearm evidence in this case is not barred by collateral estoppel "simply because it relates to alleged criminal conduct for which a defendant has been acquitted." 493 U.S. at 348.

This is because "the standard governing the admissibility of evidence" in Wade's second trial was "lower than was the burden of proof in the first trial." *Brackett*, 113 F.3d at 1402. "Under . . . *Dowling*, therefore, the government [was] not collaterally estopped from introducing the same evidence in the [second] prosecution." *Ibid.*; *cf. Gil*, 142 F.3d at 1402 n.5 (Assuming it is "otherwise admissible," "a juror might find the . . . evidence to be probative of [the defendant's] alleged knowledge of and participation in a conspiracy to possess cocaine . . . , even if that juror did not believe beyond a reasonable doubt that [he] committed the crime of possession of cocaine . . . .").

Wade's argument that *Dowling*'s "narrow holding" provides only a limited exception to *Ashe* in cases where "evidence from a prior acquittal in an unrelated proceeding" is admitted in a subsequent case "as 'other-acts evidence' under Rule of Evidence 404(b)," Appellant Br. 28, is not persuasive. First, there is no clear Supreme Court precedent establishing that the central principle of *Dowling* is limited solely to the Rule 404(b) context. Moreover, Wade's argument is inconsistent with the approach taken by the other circuits cited above, which each applied *Dowling* in situations that did not involve 404(b) evidence. *See, e.g.*, *Brackett*, 113 F.3d at 1402 & n.11 ("In *Dowling*, the contested evidence concerned extrinsic evidence of other bad acts, admissible under Fed. R. Evid. 404(b). In the instant case, however, the evidence is intrinsic evidence directly relevant to the conspiracy charge and thus is governed by Fed. R. Evid. 401–03."). In light of these facts, the Ohio court's reliance on *Dowling* in this case, and its conclusion that "*Dowling* clarified the scope of the *Ashe* holding," 2008 WL 366143, at *6 n.4, is not an unreasonable application of clearly established federal law under AEDPA.

iii

Our conclusion is not undermined by Wade's reliance on *Rice v. Marshall*, 816 F.2d 1126 (6th Cir. 1987), a case that admittedly does involve circumstances that are "strikingly similar," Appellant Br. 24, to those here. In *Rice*, the defendant was acquitted of having a weapon while under disability (i.e., being a felon), but the jury failed to reach a verdict on related rape and kidnapping charges. At retrial, defense counsel failed to object to the evidence regarding the use of a firearm during the rape and kidnapping because "[i]t did not occur to" him that *Ashe* might bar the use of such evidence and because "there was other evidence of force and

threats of force sufficient to satisfy these elements of the kidnapping and rape charges." 816 F.2d at 1129–30. This court concluded that defense counsel was deficient in not seeking exclusion, and that the defendant was prejudiced, because "[w]hile there was some evidence of other force and threats of force, testimony about the presence of the gun and the way it was handled and brandished was far more pervasive and direct." *Id.* at 1132.

Despite these factual similarities, there are crucial factors that militate against applying *Rice* in the instant case. Importantly, *Rice* predates AEDPA, under which habeas relief is now inappropriate unless "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103; *cf. Williams v. Taylor*, 529 U.S. 362, 403 (2000) (Section 2254(d)(1) "modifies the role of federal habeas courts in reviewing petitions filed by state prisoners."); *Garcia v. Dretke*, 388 F.3d 496, 504 (5th Cir. 2004) (*Ashe*'s requirements "must be considered under the AEDPA standard."). Here, unlike in *Rice*, Wade's trial counsel objected to the firearm evidence. Thus, the state courts addressed Wade's collateral-estoppel claim on the merits and made a determination, to which this court owes deference, that the other evidence of force was sufficient to support a jury's verdict.[8] Furthermore, *Rice* also predates *Dowling*, which, at the very least, clarifies the scope of the Supreme Court's collateral-estoppel doctrine. *Cf. Brackett*, 113 F.3d at 1401 n.9 ("*Dowling* effectively limits the doctrine of collateral estoppel to cases in which the government seeks to relitigate an essential element of the offense."). To the extent that *Rice* evinces a more expansive view of collateral estoppel, we must heed the Supreme Court's admonitions against "relying on [our] own precedent to conclude that a particular constitutional principle is 'clearly established'" for AEDPA purposes. *Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam).

Therefore, we reject Wade's collateral-estoppel claim and conclude that the State was not barred from introducing the firearm evidence in Wade's second trial.

---

[8]As explained above, this determination is directly supported by the verdict reached by the jury in Wade's first trial, a circumstance also not present in *Rice*. *See supra* pp. 16–17.

## B. Claim Two – Limiting Instruction and Due Process

Wade argues in his second claim for relief that even if the State were permitted to introduce the firearm evidence in his second trial, federal constitutional principles of due process required "a limiting instruction prohibiting the jury from considering Wade's alleged firearm possession in determining his guilt." Appellant Br. 30.

1

Wade's due-process claim is subject to procedural default, as there is no dispute that Wade's trial counsel did not request a limiting instruction at trial on the kidnapping count and failed to raise an independent due-process claim before the Ohio courts regarding the lack of a limiting instruction.[9] Following the State's reconsideration application, the Ohio Court of Appeals determined that Wade forfeited any error regarding the lack of a limiting instruction for the non-rape counts, and thus the court reviewed the claim only for plain error. *Wade III*, 2008 WL 1723671, at *1–2. That the state court engaged in plain-error review "does not save a petitioner from procedural default." *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *see also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) ("[P]lain error review does not constitute a waiver of state procedural default rules."). Moreover, Wade's state appellate counsel failed to raise trial counsel's alleged ineffective assistance stemming from the forfeiture of the due-process claim on direct appeal before the Ohio courts, leading to the procedural default of the ineffective-assistance-of-trial-counsel claim as well.

In order to overcome a procedural default, a habeas petitioner must demonstrate both cause for the default and actual prejudice from the alleged error of federal law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish cause, a petitioner must demonstrate "that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v.*

---

[9]*See Wade III*, 2008 WL 1723671, at *1 (Wade's counsel "did not request a limiting instruction for the gun testimony for any count other than the rape count."); Appellant Br. 36 ("Wade presumes for the sake of argument that trial counsel's failure to ask for a limiting instruction resulted in a default of his due-process claim.").

*Carrier*, 477 U.S. 478, 488 (1986)).[10] To establish prejudice, a petitioner must "sho[w] that the trial was infected with constitutional error." *Ibid.* Ineffective assistance of counsel can constitute "cause" and "prejudice" in this context, but the claim of ineffective assistance itself must have been fairly presented in the state courts or it too is subject to procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Thus, in order to rely on an ineffective-assistance-of-trial-counsel claim to excuse the default of the underlying due-process claim regarding the limiting instruction, Wade must also demonstrate cause and prejudice to excuse the procedural default of that ineffective-assistance claim by showing ineffective assistance of *appellate* counsel. *See ibid.*

To succeed in making the necessary showing of ineffective assistance of appellate counsel, Wade must demonstrate that his appellate counsel's failure to raise the ineffectiveness of trial counsel rose to the level of a constitutional violation under *Strickland v. Washington*, 466 U.S. 668 (1984). *See McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). To meet this burden, Wade must demonstrate both that his "counsel's representation fell below an objective standard of reasonableness" and that he was prejudiced by the representation—i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. In the appellate context, "[c]ounsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland*, 356 F.3d at 699.

Normally, we would "decide the procedural question of whether [Wade] is entitled to pursue [his] claim of ineffective assistance of trial counsel before we reach the merits of that claim." *Ibid.* However, on occasion, this court has reached beyond the procedural-default analysis to address the underlying claim on the merits when it "present[s] a more straightforward ground for decision." *Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Here, Wade cannot establish prejudice from the alleged

---

[10]In this case, the relevant state procedural rule is Ohio's contemporaneous-objection rule, pursuant to which trial counsel's failure to raise the instruction issue before the trial court resulted in forfeiture. *See LeFort v. Century 21-Maitland Realty Co.*, 512 N.E.2d 640, 643 (Ohio 1987) ("An appellate court will not consider any error which a party complaining of a trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.").

errors of counsel regarding the due-process claim unless the underlying claim itself had a "reasonable probability" of success if raised. *Strickland*, 466 U.S. at 694. "Because that [prejudice] inquiry necessitates delving into the actual merits of the claim, it makes sense here . . . to consider those merits in the first instance." *Young v. Trombley*, 435 F. App'x 499, 502 (6th Cir. 2011).

2

In his due-process claim, Wade contends that submitting the firearm evidence to the jury without a limiting instruction subjected him to a trial so unfair as to violate his due-process rights under the Constitution. Wade faces a very high burden on this claim. The Supreme Court has made clear that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). As expressed by this court, a habeas petitioner's claimed error regarding "jury instructions must be so egregious that [it] render[ed] the entire trial fundamentally unfair. Without such a showing, no constitutional violation is established and the petitioner is not entitled to relief." *White v. Mitchell*, 431 F.3d 517, 533 (6th Cir. 2005) (internal citation omitted). In our review, "[t]he only question" is whether the absence of the limiting instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Furthermore, we must "bear in mind" the Supreme Court's "admonition" that it has "'defined the category of infractions that violate fundamental fairness very narrowly.'" *Id.* at 72–73 (quoting *Dowling*, 493 U.S. at 352).

When viewed in the context of the jury instructions and trial record read "as a whole," *id.* at 72, we cannot say that the failure to give a limiting instruction on the kidnapping charge was an error "so egregious" that it rendered Wade's "entire trial fundamentally unfair." *White*, 431 F.3d at 533. There was sufficient other evidence of force—namely, that Wade was significantly larger than C.B., forced his way into her apartment, blocked her exit, lay on top of her, and raped her, as well as C.B.'s testimony that she could have feared for her safety and complied without the gun—for a reasonable jury to conclude that Wade kidnapped C.B. without finding beyond a reasonable doubt that he had a gun. Indeed, as stressed earlier, adopting Wade's understanding of the first jury's verdict all but compels this very conclusion. *See Wade*

*II*, 2008 WL 366143, at *6 ("[A]lthough the first jury determined that appellant did not have a gun, it nevertheless found appellant guilty of rape and kidnapping, thereby finding the element of force beyond a reasonable doubt even without a gun.").

In fact, when reviewing for plain error following the State's application for reconsideration, the Ohio Court of Appeals itself could not "say that the outcome of [Wade's] kidnapping conviction clearly would have been different but for a limiting instruction as to the gun testimony." *Wade III*, 2008 WL 1723671, at *2. After reviewing the other evidence of force in the record, the court determined that a reasonable jury could have found the force required for kidnapping even without evidence of the gun. *Ibid.*[11] Similarly, following Wade's application for reopening, the Ohio Court of Appeals rejected Wade's claim of ineffective assistance of appellate counsel regarding the limiting instruction in light of "[t]his same evidence" of force unrelated to the gun. *Wade IV*, No. 06AP-644, slip op. at 5. The parties

---

[11]Wade argues that the differing outcomes of *Wade II* (reversing his convictions) and *Wade III* (reinstating his non-rape and non-aggravated-burglary convictions) following the State's application for reconsideration clearly demonstrate that Wade's kidnapping conviction was only reinstated because trial counsel's failure to object led to plain-error review regarding the lack of a limiting instruction. *See* Appellant Br. 39–40. In *Wade II*, the Ohio Court of Appeals reversed all of Wade's convictions after determining that the trial court "abused its discretion" by not giving a limiting instruction on the rape offense. 2008 WL 366143, at *7. The court also stated that the non-firearm evidence of force was "minimal," *id.* at *7 n.7, and that absent a limiting instruction, "there was a significant danger that the jury in the second trial would find the element of force for rape based upon evidence that the appellant had a gun." *Id.* at *7. After the State stressed in its reconsideration application that Wade's counsel failed to object on the kidnapping charge, the court reviewed for plain error and reinstated his conviction on that count.

It is true that the Court of Appeals reinstated the kidnapping conviction after reviewing for plain error; however, the change in standard of review was not the only basis of the State's application for reconsideration or of the court's resulting decision. In addition to the plain-error forfeiture issue, the State argued that the *Wade II* court's reversal on all counts was flawed simply because it went "beyond what the claimed error regarding the rape count can justify." And, in its decision granting the State's application, the court held that "[t]he trial court's error in not providing [the] instruction [on the rape charge] did not necessarily implicate [Wade's] other convictions." *Wade III*, 2008 WL 1723671, at *1. It is not necessarily true, then, that the Court of Appeals would have affirmed the reversal of Wade's kidnapping conviction under a more generous standard of review. *Cf. Sheets I*, 2012 WL 870221, at *28 (The statements in Wade II regarding "minimal" evidence and "substantial likelihood" "relat[e] to [Wade's] rape conviction, not to evidence of force involved in the kidnapping charge."). Moreover, the *Wade III* court also affirmed the reversal of Wade's aggravated-burglary conviction, even under plain-error review, because, unlike for kidnapping, there was "no other evidence" to establish a threat of physical harm for that charge besides the gun. *Wade III*, 2008 WL 1723671, at *2. This lends further support to the notion that the change in standard of review was not the only dispositive issue on reconsideration.

dispute the extent to which we may apply AEDPA deference to such determinations made in a plain-error context.**12**

In any event, given the presence of the other evidence of force, we cannot conclude that the trial court's failure to instruct the jury to restrict its view of the firearm evidence rises to the level of a constitutional-due-process violation. This is especially true in light of the Supreme Court's recognition that "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Furthermore, our decision comports with recent holdings by the Supreme Court and this court establishing that a defense counsel's failure to request—or a trial court's failure to give—even an appropriate limiting instruction will not require reversal where other evidence in the record supports conviction.

For example, in *Berghuis v. Thompkins*, the Supreme Court reversed a grant of habeas corpus after determining that, even if defense counsel's failure to request a limiting instruction regarding the outcome of an accomplice's prior trial were deficient representation, the failure was not prejudicial because there was still "ample evidence in the record to support [the defendant's] guilt under either theory" of the crime. 560 U.S. 370, 390–91 (2010) (noting that the defendant was identified by a surviving victim, was captured on a surveillance camera, and had confessed to a friend). Notably, the Supreme Court reached this result even under a de novo standard of review without having to determine whether AEDPA deference applied. *Ibid.*

Similarly, in *Leberry v. Howerton*, this court determined that trial counsel's failure, even if deficient, to request a jury instruction explaining that accomplice testimony must be corroborated did not "cas[t] doubt on the fairness of [the defendant's] trial" or "undermin[e] confidence in the outcome" because other "corroborating evidence," including medical testimony and victim and witness identifications, supported the defendant's conviction. 583 F.

---

**12***Compare Frazier v. Jenkins*, 770 F.3d 485, 496 n.5 (6th Cir. 2014) ("[P]lain-error review is not equivalent to adjudication on the merits, which would trigger AEDPA deference."), *with id.* at 506 (Sutton, J., concurring in part) ("[A] state court's plain-error review of an issue may receive AEDPA deference when the state court addresses the merits of the federal claim."), *Lee v. Comm'r, Alabama Dep't of Corr.*, 726 F.3d 1172, 1210 (11th Cir. 2013) (State court plain-error review that reaches the merits of a federal claim "is an adjudication 'on the merits' for purposes of § 2254(d) and thus AEDPA deference applies to it."), *and Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009) (Plain-error review "can be considered [an] 'adjudicat[ion] on the merits' for the purpose of receiving deference under AEDPA.").

App'x 497, 502 (6th Cir. 2014). As a result, the defendant could not "show a substantial chance that even if the proper instruction had been given, the outcome of the trial would have differed," and, therefore, the failure to give the instruction did not violate his federal constitutional rights. *Ibid.* In addition, even where a state appellate court had concluded that a limiting instruction regarding certain evidence should have been given by the trial court, this court in *Puertas v. Overton* affirmed the denial of habeas relief because the failure to instruct the jury "did not result in a miscarriage of justice," in part because of the existence of other relevant and powerful evidence of the defendant's guilt. 168 F. App'x 689, 703 (6th Cir. 2006) (noting that the defendant participated in several controlled buys of illegal narcotics).

Given the Ohio courts' view that the jury in Wade's first trial determined that he did not have a gun, it might have been desirable for the trial court to have instructed the second jury to limit its consideration of the firearm evidence—though the proper wording of such an instruction is difficult to envision. However, for Wade to succeed on his due-process claim on federal habeas review, it is not enough that "the instruction[s]" as given were "undesirable, erroneous, or even universally condemned." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (internal quotation marks omitted). Therefore, we reject Wade's due-process claim on the merits, and do not need to determine whether the procedural default of this claim was excused.

IV

For the foregoing reasons, we AFFIRM the district court's denial of Wade's petition for a writ of habeas corpus.